IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | |
| : | **Chapter 11** |
| USRE 257 LLC, : | |
| : | **Case No. 2:23-bk-12967** |
| *Debtor.* : | |

**DEBTOR'S RESPONSE IN OPPOSITION TO CITIZENS BANK, N.A.'S "EMERGENCY" MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE OR, IN THE ALTERNATIVE, DISMISSAL OF CHAPTER 11 CASE**

**I.    INTRODUCTION[1]**

On September 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").  Less than two weeks after that filing, Citizens Bank, N.A. (the "Bank"), seeks to effectively derail the "breathing room" intended under the Bankruptcy Code's automatic stay, manufacturing an "emergency" that is really nothing more than cover for the Bank's attempts to take the only meaningful asset of the bankruptcy estate – <u>one in which, even after the Bank's over-inflated claim, has millions in equity according to an October, 2022 appraisal by the Bank</u>.  This is contrary to well-established law in this Circuit that the property of a single-asset real estate entity is usually a necessity for the effective reorganization of the Debtor.

---

[1] Debtor does not believe that this matter warrants emergency consideration, particularly in the early stages when Debtor's efforts should be concentrated on its initial filings and schedules.  This represents another attempt by the Bank to force Debtor to incur litigation expenses (for which the Bank will seek to recover under its Loan Documents to the detriment of other creditors) instead of working out a solution for reorganization.

{01697831;5}                                   1

This is not an emergent matter. Indeed, many of the factors on which the Bank bases its claims for emergent relief are either factually incorrect or red herrings, and the actual facts are:

- Debtor is a single-asset real estate entity, so any Plan of reorganization would have to be presented within 90 days.
- Contrary to the Bank's claims, the Property has been secured and the most critical L&I violations were addressed <u>before the Bank filed this "emergency" Motion on Wednesday.</u> The Bank's failure to verify these facts before filing this Motion and seeking emergent relief betray its true intentions – to take the valuable asset of the estate for itself.
- It is early October, and "winterizing" the Property is not yet necessary. Indeed, despite the fact that the loan on the Property allegedly matured in November of 2022, the Bank left the Property as it was and sought no relief all of last winter (winter of 2022-2023).

Likewise, the Bank's request that this Chapter 11 be dismissed alleging it was filed in bad faith is also without basis. A large number of corporate Chapter 11 filings are done with "creditors at the door" and potential litigation bearing down on the Debtor. The automatic stay and breathing room provided by the Bankruptcy Code is precisely the reason why debtors elect for a Chapter 11 filing. Here, Debtor has proceeded with its Chapter 11 filing in good faith and has:

- Appeared for its Debtor interview on October 11, 2023 and provided the requested documentation in advance of that interview – this was done on the first date scheduled without any request for an extension or delay;
- Filed all of its schedules and related filings on Friday, October 13, 2023 – this was done by the first deadline set by the Court and without any requested extension or delay;
- Has already located one potential purchaser for the subject Property and is moving along expeditiously with its Plan

The Bank's "Emergency" Motion is nothing but an end-run on this Court's jurisdiction and the well-established bankruptcy procedures for fair adjudication of Chapter 11 proceedings. The

Bank wants to take the Property and have control to sell it. Indeed, evidencing the Bank's true intentions, it **refused** an offer from Debtor to be allowed control of the Property for purposes of security and safety. The Bank's "Emergency" Motion should be denied.

## II.   RELEVANT FACTS

### A.   *The Subject Property And The Loan Documents*

The Property at issue in this matter is a 17 floor, residential building located at 257 South 16th Street in Philadelphia (on the northeast corner of Spruce and 16th Streets). Debtor acquired that Property for purposes of renovating and developing the Property as a multi-unit residential property with first floor retail. The Property is currently unoccupied.

The Bank's predecessor-in-interest, Investors Bank, made a construction loan to and for the benefit of the Debtor in the aggregate principal amount not to exceed $14,000,000 (the "Loan"). The construction loan was evidenced by, *inter* alia, a Loan Agreement (dated 11/30/2020) and a Mortgage Loan Note (also dated 11/30/2020). [*See* Bank's Motion, Exs. A and B.] The Bank also has a first-position mortgage on the Property. [*See* Bank's Motion, Ex. C.] The construction loan was intended to be used for purposes of conducting the renovations and development of the Property.

### B.   *The Bank Takes Over Investors Bank Shortly Before Debtor's Loan Comes Due; The Bank Takes Months To Assign A New Loan Officer*

Citizens Bank acquired Investors Bank shortly before Debtor was due for a negotiation of a loan extension for the construction loan. However, it took approximately three months for a new loan officer to get assigned to the construction loan. Thereafter, by the time the Bank assigned Debtor a loan officer, the Bank decided that it wanted to do a complete loan review before making any decision on the loan extension. The Bank took another two months just to get an appraisal, after which the Bank wanted to perform additional cost review. During this period, Debtor was

unable to continue work on the project. This was, at least in part, a contributing cause to issues with the project. The Bank's hands are not clean.

### C. The Bank Confesses Judgment And Seeks To Take Over Full Control Of The Property, Including The Sole Right To Sell And Market The Property; The Bank Refuses More Limited "Control" Under Which It Could Have Secured The Property

On September 19, 2023, the Bank filed a Judgment by Confession, Complaint in Confession of Judgment and related materials in the Philadelphia County Court of Common Pleas (the "Confessed Judgment."). [*See* Bank's Motion, Ex. E.] In connection with that Confessed Judgment, the Bank entered judgment for:

| | |
|---|---|
| Principal: | $9,583,461.76 |
| Interest: | $1,198,332.02 |
| Late Charges: | $   49,125.23 |
| Attorneys' Fees and Costs: | $1,624,637.852 |
| TOTAL: | $12,455,556.90 |

[*Id.*] Indeed, despite incurring only a tiny fraction of the assessed attorneys', thus effectively overinflating its judgment (possibly for purposes of attempting to undercut potential Debtor's equity in the Property), the Bank indicated that its $1.6M+ attorney assessment was just a "placeholder." [*See Id.*] Even with this inflated confessed judgment, there is still equity in the Property, as the Bank's October, 2022 appraisal valued the Property on an "as is" basis at $15.1M. [*See* Exhibit 4.]

On September 21, 2023, Citizens filed an Emergency Petition for the Appointment of Receiver against Debtor in the Confessed Judgment Action (the "Petition for Receiver"). [*See* Bank's Motion, Ex. E.] Although the Bank paints this "Emergency Motion" as related to security

{01697831;5}    4

issues at the Property, the Bank glosses over the fact that its Emergency Petition sought full and complete control over the property, including the sale and marketing of the Property. [*See Id.*]

After removing the case to Federal Court, which Debtor, a Delaware LLC, felt was appropriate, Debtor filed this Chapter 11 case on Friday, September 29, 2023, in an attempt to get breathing room to effectuate a reorganization.

> **D.    Debtor Secures The Property And Addresses Immediate Security Issues Raised By L&I**

Prior to the scheduled hearing in State Court on the Bank's "emergency motion," Debtor communicated its willingness to address the security concerns and takes steps to close openings into the building.  The Bank and Debtor had representatives meet at the Property on September 26, 2023, during which time the Debtor had a crew of workers securing the Property. [S*ee* Exhibit 1 (photographs).] The Bank admits "that the Debtor had made progress boarding up the windows and removing a fire escape, making it significantly more difficult to unlawfully enter the property." [*See* Debtor's Motion, ¶25.]  Despite having representatives present at the Property, the Bank refused to tell Debtor what other security issues that it felt needed to be addressed – instead apparently trying to play a game of "gotcha" with Debtor.  In fact, counsel for Debtor again contacted counsel for the Bank on September 27, 2023, via email and specifically requested that counsel identify if there were any open issues that the Bank felt had to be addressed. [*See* Exhibit 2.] <u>Counsel for the Bank never responded</u>, instead making the calculated decision to wait to raise the alleged issues in litigation filings.  If the Bank had any real security concerns you would have expected the Bank to have provided that information to Debtor.  Indeed, using the expense of litigation to attempt to prevent Debtor from being able to defend itself against the Bank's attempts to take control of the Property has been the Bank's *modus operandi* since it took over the loan relationship.

Debtor admits receiving Notices from L&I related to remaining issues at the Property, on October 2, 2023. [*See* Bank's Motion, Ex. G.] Debtor promptly took action to resolve those immediately security issues, including sealing the basement window and bars, sealing the fire tower doors, and sealing the remaining openings highlighted. [*See* Exhibit 3 (photos).] This work was completed by October 9, 2023. As such, the conditions were corrected <u>before</u> the Bank filed this Motion, in which it incorrectly asserts that those issues still exist.

### III.   ARGUMENT

#### A.   *Application of The Automatic Stay To Provide Debtor Breathing Room To Come Up With A Viable Plan*

The automatic stay is "one of the fundamental debtor protections supplied by the Bankruptcy Code." *In re Atlantic Med. Mgmt. Servs., Inc.*, 387 B.R. 654, 662 (Bankr. E.D. Pa. 2008) (citing *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1074 (3d Cir. 1992)); *see also In re Ellis*, 339 B.R. 136, 140 n.7 (Bankr. E.D. Pa. 2006) (noting that the automatic stay gives the debtor "a breathing spell from his creditors by stopping all collection efforts, all harassment and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be free of the financial pressures that drove him into bankruptcy."). Specifically, Section 362(a)(3) of the Code stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Further, Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate."

A court may lift the automatic stay "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (2) with respect to a stay of an act against property under subsection (a) of this section, if-(A) the debtor does not have an equity in such property; **and** (B) such property is not necessary to an effective reorganization." 11 U.S.C. §

362(d)(2) (emphasis added). Whether to terminate or modify the bankruptcy stay under section 362(d) is within the discretion of the bankruptcy court and is a determination made by examining the totality of the circumstances. *In re Milstein*, 304 B.R. 208, 211 (Bankr. E.D. Pa. 2004) (citations omitted); *see also In re Rambo*, 2004 Bankr. LEXIS 113, 2004 WL 231011, at *2 (Bankr. E.D. Pa. Jan. 29, 2004). <u>The party requesting relief from the automatic stay has the burden of proof with regard to the issue of the debtor's equity</u>, and the party opposing such relief has the burden of proof that the property is necessary to an effective reorganization. *Nazareth Nat'l Bank v. Trina-Dee, Inc.*, 731 F.2d 170, 171 (3d. Cir. 1984); 11 U.S.C. § 362(g)(1-2).

A debtor lacks equity in property for purposes of section 362(d)(2) when "the debts secured by liens on the property exceed the value of the property." 3 Collier on Bankruptcy, P 362.07[4][a] at 362-98 (15th ed. 2002). In other words, in making a determination on equity, a court "focuses on a comparison between the total liens against the property and the property's current value . . . all encumbrances are totaled to determine equity whether or not all lienholders have requested relief from the stay." *In re Indian Palms Assoc., LTD.*, 61 F.3d 197 (3d Cir. 1995) (emphasis added); *see also Sutton v. Bank One, Texas, N.A.*, 904 F.2d 327 (5th Cir. 1990); Stewart v. Gurley, 745 F.2d 1194, 1195 (9th Cir. 1984). If the movant demonstrates that the debtor has no equity in the property, then the debtor has the opportunity to prevent modification of the automatic stay by showing the court that the property is necessary for an effective reorganization. *See In re Ripley*, 412 B.R. 690, 697-98 (Bankr. E.D. Pa. 2008)(citing *In re Epic Capital Corp.*, 290 B.R. 514, 520 (Bankr. D. Del. 2003). The Supreme Court has outlined the standard necessary for demonstrating whether property is necessary for an effective reorganization:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in the prospect*.

> This means . . . that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Savings Assoc. of Texas v. Timbers of Inwood Forest*, 484 U.S. 365, 376-77, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) (emphasis in original).

### B.    *Debtor Has Equity In The Property*

At this early stage in bankruptcy proceedings, only (2-3 weeks after filing), Debtor believes that there exists equity in the Property that could be used to fund the potential Plan of the Debtor. Debtor believes that, with the work already completed and money invested, there is a good start to the work that a future purchaser and developer of the Property would need to undertake.[2] In connection with its Plan, Debtor intends to get some form of appraisal of the Property. **As noted above, however, the last appraisal of the Property, performed on behalf of the Bank in October of 2022, values the project on an "As-Is" basis at $15.1 million – thus leaving equity in the Property to fund a reorganization and pay money to creditors (secured and unsecured) in addition to the Bank**. [*See* Exhibit 4.][3]

Moreover, the total of liens/judgments on the Property is overstated by virtue of the fact that the Bank's own records indicate that it only advanced slightly more than $9.2M of the $14M construction loan and that its own Confessed Judgment includes a "placeholder" attorney fee assessment in excess of $1.2M, while admitting that it will only actually be entitled to actual, reasonable fees incurred.

---

[2] In fact, the Bank performed an appraisal less than a year ago which shows there is substantial equity in the Property. The Appraisal provides an "as is" value of $15.1M. [*See* Exhibit 4.]

[3] As such, this equity protects the Bank's interests. Moreover, as Debtor is a single-asset real estate entity, the Bankruptcy Code provides the Bank with the ability to obtain relief from the automatic stay which are not available to creditors in ordinary bankruptcy cases. 11 U.S.C. § 362(d). On request of a creditor with a claim secured by the single asset real estate and after notice and a hearing, the court will grant relief from the automatic stay to the creditor *unless the debtor files a feasible plan of reorganization or begins making interest payments to the creditor within 90 days from the date of the filing of the case, or within 30 days of the court's determination that the case is a single asset real estate case*. The interest payments must be equal to the non-default contract interest rate on the value of the creditor's interest in the real estate. 11 U.S.C. § 362(d)(3). That time has not yet passed.

The Bank's Motion offers no actual valuation of the Property or net value accounting for liens and encumbrances – <u>a threshold item on which the Bank has the burden of proof</u>. [*See, e.g.,* Bank's Motion, ¶¶28-29 (conceding that some equity may exist in the Property, "upon information and belief" but not providing any actual valuation).] This is curious when the Bank has an appraisal which proves there is equity in the property. As such, particularly at this <u>very early stage of the bankruptcy proceedings</u>, the Motion should be denied.

### C. The Property Is Critical For Reorganization And Any Potential Plan

Although this factor is dismissed by the Bank in one sentence, without any actual analysis, the Third Circuit has long recognized that, in the case of a single-asset real estate entity, the Property will almost always be essential for any Plan. *See, e.g., In re Indian Palms Assoc., LTD.*, 61 F.3d 197, 209 (3d Cir. 1995) ( "[i]n a single asset bankruptcy case . . . the property will almost always be necessary for reorganization for the very reason that it is the debtor's sole asset, and relief under 362(d)(2)(B) will be available only if the bankruptcy court concludes that reorganization within a reasonable time is not feasible"); *In re Ripley*, 412 B.R. 690, 700-01 (Bankr. E.D. Pa. 2008).

Indeed, the Court's discussion in *In re Ripley*, 412 B.R. 690, 700-01 (Bankr. E.D. Pa. 2008), is highly relevant here, where the Court determined that the where, in the early stages of a bankruptcy, and the only real asset is the property upon which the lender seeks relief from the stay, the Motion for Relief should be denied:

> Despite the Court's conclusion that Mr. Ripley lacks equity in the Property, the stay will not be lifted at this early stage in the Debtor's bankruptcy because the Property is necessary for an effective reorganization pursuant to 11 U.S.C. § 362(d)(2). Mr. Ripley presented at the August Hearing, and has since filed, what this Court considers to be a potentially viable bankruptcy plan (the "Plan"). The Plan, as more fully detailed above … calls for selling the Property and distributing the proceeds to the secured creditors. The Plan calls for obtaining a binding agreement of sale on the Property by July 16, 2009.

> As a preliminary matter, it is clear that the Property is necessary to effectuate the Plan; the Property is Mr. Ripley's sole valuable asset and the one which is secured by his four primary creditors. *See In re Indian Palms Assoc., LTD.*, 61 F.3d 197, 209 (3d Cir. 1995) ( "[i]n a single asset bankruptcy case . . . the property will almost always be necessary for reorganization for the very reason that it is the debtor's sole asset, and relief under 362(d)(2)(B) will be available only if the bankruptcy court concludes that reorganization within a reasonable time is not feasible").
>
> Thus, the question becomes whether the Plan is viable. The Bank contends that the Plan and this case are "going nowhere" and should be cut off sooner rather than later in order to pay the secured creditors in the most timely way possible. Mr. Ripley, on the other hand, argues that he is on the cusp of getting necessary building approvals for the Property. When these are obtained, the Debtor asserts, the value of the Property will increase greatly. Thus, according to the Debtor, there is a benefit to selling the Property in an organized, timely way and marketing it carefully, rather than selling the land in a rushed manner out of bankruptcy. The former, contends Mr. Ripley, will create more value for secured creditors and means that the Plan is confirmable.
>
> Here, the Court agrees with the Debtor. The Plan appears at this early stage to be viable. *If there is one thing that everyone agreed on at the August Hearing it is that the Property is in a desirable, central location and that the land can and will ultimately be developed.* … Thus, there seems to be no reason to rush to sell the Property, particularly in the current volatile real estate market. The Debtor and Mr. Showalter have done a great deal of work researching and planning how best to develop the Property. It would be a waste not to see that labor come to fruition by allowing these parties to attempt to market this Property in the way that they deem to be most fitting and profitable. Lifting the stay at this point could potentially eradicate much of the work that has been done with regard to the development of the Property up to now.

*In re Ripley*, 412 B.R. 690, 700-01 (Bankr. E.D. Pa. 2008)(emphasis added).

Similarly here, the Property is the only real asset of Debtor, and thus is critical for any possible reorganization. Ever stronger than the facts in *Ripley*, the Bank's on documents indicate that there is equity in the Property on an "As-Is" basis. The Property is located in highly desirable area in Center City and can ultimately be developed. Although no Plan has yet been filed, Debtor intends to file a Plan with either a "stalking horse bidder" or for allowing for the marketing and

sale of the Property to maximize the sale price to allow creditors in addition to the Bank to be paid. <u>In fact, by selling the Property pursuant to a plan, the Estate will save $645,978.</u>[4] This is because a sale pursuant to a plan would avoid Pennsylvania and Philadelphia realty transfer taxes while a sale outside of bankruptcy would be subject to the realty transfer taxes. In fact, even at this very early stage, Debtor has already located one interested potential purchaser of the Property.

Moreover, just as here, in denying the Motion for Relief, the *Ripley* Court also took note of the fact that the case was very early in its timeline and "[i]t is simply too soon to declare that the Debtor has no chance of proceeding successfully with his bankruptcy remedies." *In re Ripley*, 412 B.R. at 701 (also stating "Further, it is unlikely, or at least unclear, that the Bank would receive payment on its debt any faster if the stay were lifted."); *see also In re Dupell*, 235 B.R. 783, 795 (Bankr. E.D. Pa. 1999) ("[a] bankruptcy court should be reluctant to deprive a debtor of the benefits of Chapter 11 relief before it has an adequate opportunity to utilize its rehabilitative features"); *In re American Sweeteners, Inc.*, 1999 Bankr. LEXIS 1457, 1999 WL 1068446, at *3 (Bankr. E.D. Pa. Nov. 22, 1999) (same). The date of the Hearing on this Motion will be only 3 weeks from date of the filing of the Chapter 11 Petition. The Court should not deprive Debtor of its "chance of proceeding successfully with his bankruptcy remedies." *In re Ripley*, 412 B.R. at 701.

### D. This Is Not A Bad Faith Bankruptcy Filing

A bankruptcy filing made in bad faith may be dismissed "for cause" under § 1307(c). *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (citing *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)). To determine if a bankruptcy filing has been made in bad faith, a bankruptcy court must look to the "totality of the circumstances" and may consider a wide range of factors including: (1) the nature of the debt; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing

---

[4] This is based on a sale at the Bank's appraised "As Is" value and a transfer tax of 4.278%.

the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *See In re Myers*, 491 F.3d at 125; *In re Lilley*, 91 F.3d at 496) (additional citations omitted)).

A dismissal based upon lack of good faith "**should be confined carefully and is generally utilized only in those egregious cases** that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) (citing *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991))(emphasis added). Egregious conduct is conduct that is "extremely or remarkably bad." Egregious, Merriam-Webster's Collegiate Dictionary (11th ed. 2003); Egregious, Black's Law Dictionary (8th ed. 1999). The word "egregious" is most synonymous with the word "flagrant," which is defined as conduct "so obviously inconsistent with what is right or proper as to appear to be a flouting of law or morality." Flagrant, Merriam-Webster's Collegiate Dictionary (11th ed. 2003). Once a creditor makes a prima facie showing that a case was filed in bad faith, the burden shifts to the debtor to prove by a preponderance of the evidence that the case was filed in good faith. *In re Demeza*, 576 B.R. at 477, *aff'd sub nom. Hackerman v. Demeza*, 576 B.R. 472.

The Court first considers whether the debt resulted from bad acts or intentions of the Debtor. *In re Manfredi*, 434 B.R. 356, 359-60 (Bankr. M.D. Pa. 2010) (citing e.g., *In re Myers*, 491 F.3d at 126) (additional citations omitted). Ordinarily, for a debt to take on bad faith significance "there must be some additional aggravating factors at issue, such as the debtor's concealment of assets, falsification of records, transfer of assets beyond the reach of creditors or some other behavior designed to interfere with the 'orderly judicial process for resolution of ...

{01697831;5}    12

debt.'" *In re Jensen*, 369 B.R. 210, 235 (Bankr. E.D. Pa. 2007). There are no such evidence presented by the Bank here.

Regarding timing, a bankruptcy filing during the pendency of related state court litigation is not necessarily evidence of bad faith. *In re Myers*, 491 F.3d at 125 (citations omitted); *see also In re Kerschner*, 246 B.R. 495, 499 (Bankr. M.D. Pa. 2000); *In re Zaver*, 520 B.R. 159, 167 (Bankr. M.D. Pa. 2014). Generally, bad faith only exists "'where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose.'" *In re Myers*, 491 F.3d at 125 (quoting *In re Dami*, 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994)). Bad faith has thus been found in cases where the purpose of the bankruptcy filing is solely to "thwart a creditor claim rather than making an honest effort to pay debts[.]" *In re Cartwright*, No. 1-13-BK-03952MDF, 2014 Bankr. LEXIS 2518, 2014 WL 2574502, at *5 (citing In re Fleury, 294 B.R. 1, 8 (Bankr. D. Mass. 2003)). Here, Debtor's bankruptcy filing was solely for the goal of enabling an effective reorganization, where there is likely equity in the Property, and Debtor simply sought the "breathing room" to effectively reorganize. Indeed, the fact that Debtor has already located one interested potential buyer shows Debtor's genuine interest in reorganizing.

Regarding motive, it is not bad faith to avail oneself of a particular protection in the Code - such as the automatic stay - because Congress enacted such protections with the expectation that they would be used. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 127 (3d Cir. 2004) (citing *In re James Wilson Assocs.*, 965 F.2d 160 at 170 ("It is not bad faith to seek to gain an advantage from declaring bankruptcy-why else would one declare it?"); *In re PPI Enters.*, 228 B.R. 339 (Bank. D. Del.1998) ("it is not 'bad faith' for debtors to file for bankruptcy in order to take advantage of a particular provision of the Code"). Likewise here, the Debtor filed this Chapter

{01697831;5}    13

11 case in order to avail itself of the protections of the Code and to gain breathing room from the Bank's persistent collection tactics. This is not bad faith.

There is no evidence that Debtor has sought to conceal assets or misrepresent items to the Bank or its other creditors. There is no evidence that Debtor has improperly distributed assets. In fact, the evidence shows that, once Debtor involved counsel, shortly before the filing of the Chapter 11 Petition, Debtor began taking steps to secure the building and address L&I violations. Simply filing bankruptcy to gain the benefit of its protections and procedures – with the express intent of generating a Plan of reorganization, cannot be considered bad faith, even it ran contemporaneously with the pursuit of state court litigation by the Bank. The Motion in the alternative to Dismiss should be denied.

### IV. CONCLUSION

For these reasons, Debtor respectfully requests that the Court deny the Motion and allow Debtor to move forward with the preparation of its Plan.

SILVERANG, ROSENZWEIG & HALTZMAN, LLC

By:  /s/ Mark S. Haltzman
Mark S. Haltzman, Esquire
Malcolm S. Gould, Esquire
Attorney ID Nos. 38957/80254
900 E. 8th Avenue, Suite 300
King of Prussia, PA  19406
610-263-0115
mhaltzman@sanddlawyers.com
mgould@sanddlawyers.com
*Attorneys for Debtor*